Filed 7/27/15  North Beach Partners v. Sollner CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NORTH BEACH PARTNERS, LLC, et al.<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>JOHN SOLLNER,<br><br>Defendant and Respondent. | A139893<br><br>(San Francisco County<br>Super. Ct. No. CGC-11-509179) |

The parties have previously been before this court in litigation arising from respondent John Sollner's sale of unit 4 of 3300 Clay Street to North Beach Partners, LLC (NBP).  (See *North Beach Partners, LLC v. John Sollner* (Dec. 19, 2014, A136514) [nonpub. opn.] (*NBPI*).)  In the prior appeal, we affirmed the trial court's judgment finding in favor of Sollner and denying NBP's attempt to rescind the sale of the property. (*Id.* at pp. 2–3, 6.)  Thereafter, the court entered an order directing NBP to pay to Sollner the sum of $94,374.50 for attorney fees incurred in the underlying trial.  Following entry of the court's order on fees and relying on an arbitrator's findings in two related actions between the parties, Sollner moved to amend the judgment to add W.B. Coyle and Telegraph Hill Properties, Inc. (appellants) as additional judgment debtors on the theory that they were alter egos of NBP.[1]  On July 9, 2013, the court granted the motion and entered an amended judgment.

---

[1] In those actions, the arbitrator found that appellants, NBP, Dissolution Properties, and Terrapin Ventures, LLC, were all alter egos of each other and acted on

1

Appellants contend the court erred in relying on the arbitrator's findings because the arbitrator's award was not yet final and had no collateral estoppel effect. We affirm.

## I. FACTUAL BACKGROUND

The facts of the underlying litigation are set forth in the opinion filed in *NBPI*. In summary, Sollner was part of an investment group with NBP that purchased the six-unit Clay Street property in 2004. (*NBPI*, *supra*, at p. 1.) Under the tenancy in common agreement between the parties, Sollner had exclusive rights to units 1 and 4, but NBP also retained an interest in unit 4 under a profit-sharing agreement with Sollner. (*Id.* at pp. 1–2.) In 2008, Sollner and NBP became embroiled in a series of legal disputes concerning unit 4 and another property and they eventually entered into a settlement under which NBP agreed to purchase Sollner's interest in unit 4. (*Id.* at p. 2.) NBP subsequently sued Sollner to rescind that part of the settlement agreement under which it purchased unit 4, alleging that Sollner failed to comply with the Subdivided Lands Act because he had not obtained a public report. (*Ibid.*) We affirmed the trial court's findings that the Subdivided Lands Act did not apply because the property was transferred through a settlement agreement, and that NBP was not entitled to rescission. (*Id.* at pp. 2–3.)

The Clay Street property transaction resulted in additional litigation between the parties. On August 25, 2011, the trial court referred *Dissolution Properties LLC v. Sollner* (Super. Ct. S.F. City and County, 2010, No. CGC10-501629), an action seeking an equitable lien on the property, and *North Beach Partners, LLC v. Sollner* (Super. Ct. S.F. City and County, 2010, No. CGC10-501631), an action seeking partition against the other owners of the property, to arbitration. The arbitrator issued a final award in those cases on January 29, 2013, finding, inter alia, that NBP and appellants were each alter egos of the other and acted as if they were one entity in connection with the sale, promotion, and management of the property.

---

behalf of the others as if they were one entity. Dissolution Properties and Terrapin Ventures, LLC, are not at issue in this appeal.

2

This appeal follows the court's entry of an amended judgment authorizing Sollner to recover his attorney's fees of $94,374.50 and costs of $2,401.97 from NBP and its alter egos, appellants.

## II.  DISCUSSION

Appellants contend that the trial court erred in applying collateral estoppel to the arbitrator's finding that they were alter egos of NBP because the arbitrator's award was not yet final.[2]  We disagree.

Collateral estoppel applies to arbitration awards.  (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1335–1336.)  Appellants argue, however, that the arbitration award was not entitled to collateral estoppel effect because an appeal was pending.  While a judgment or order does not become res judicata or conclusive until it is final in that it has been upheld on appeal or the time for an appeal has expired (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 532–533; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 364, p. 986), this rule is not applicable to arbitration awards.  Several courts have viewed an unconfirmed arbitration award as the equivalent of a final judgment.  (*Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 759 (*Thibodeau*).)

The *Thibodeau* court relied on *Trollope v. Jeffries* (1976) 55 Cal.App.3d 816, 822–823 (*Trollope*), in concluding that an unconfirmed arbitration award was entitled to res judicata effect.  The court there observed:  "Although it is true that an arbitration award is not a judgment having the same force and effect as a judgment in a civil action until it is confirmed [citations] and that until it is confirmed it has only the same force and effect as a contract in writing between the parties to the arbitration [citations], it is, nevertheless, the final and binding decision or judgment of the arbitrator in the exercise

_____

[2] NBP moved to vacate the arbitrator's award on April 22, 2013.  Sollner and Scott Jacques (another investor in the Clay Street property) petitioned to confirm the award. On October 13, 2013, the court granted the petition to confirm the award and entered judgment in favor of Sollner, Jacques, Edward Elms, and Reginald Hindley and against NBP, appellants, and Terrapin Ventures, LLC, in the sum of $476,066.46.  NBP and appellants have appealed the trial court's order confirming the award.  The appeal is pending.

3

of his quasi-judicial function . . . . [¶] . . . [¶] It is a recognized principle that an arbitration award is conclusive on matters of fact and law . . . [and] 'all matters in the award are thereafter res judicata, on the theory that the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy.' " (*Trollope, supra,* at pp. 822–823; and see *Kelly v. Vons Companies, Inc., supra,* 67 Cal.App.4th at pp. 1335–1336 [findings made during arbitration may be given collateral estoppel effect in a subsequent lawsuit]; *Lehto v. Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 939 [arbitration award conclusive on matters of fact and law and all matters thereafter are res judicata].)  The reason for this rule is the limited judicial review applicable to arbitration awards. (*Thibodeau, supra*, 4 Cal.App.4th at pp. 759–760.)  " '[T]he purpose of arbitration is to settle differences in a summary manner outside of court for the purpose of expediting a decision by the use of an arbitrator . . . .  [T]he essential adjudication in an arbitration proceeding is the award.  The function of the court is limited to confirming the award as made, or to correct and confirm it as corrected, or to vacate it within the limitations and as provided by the statutes.  [Code Civ. Proc., § 1286.2]' [Citation.]  '[E]very presumption favors the arbitrator's award, and the merits of the award, either on question of law or fact, are generally not subject to review.' " (*Thibodeau*, *supra*, at p. 760.)

Appellants acknowledge the *Thibodeau* case but contend that it is distinguishable because it involved the doctrine of res judicata, not collateral estoppel.  They rely on *Scott v. Snelling and Snelling, Inc.* (N.D.Cal. 1970) 732 F.Supp. 1034, 1039, in which the court declined to give collateral estoppel effect to an unconfirmed arbitration award.  In that case, however, the litigant seeking to assert collateral estoppel was not a party to the arbitration or in privity with the party in the prior case in which the issue was decided. (*Id.* at p. 1038.)  That is not the case here where the parties in the fee motion were also parties to the arbitration.

Moreover, while the arbitration award had not yet been confirmed in July 2013 when the court granted Sollner's motion to amend the judgment to add appellants as additional judgment debtors, the court did confirm the award in October 2013.  California

4

law treats confirmed arbitration awards as judgments. A confirmed arbitration award has "the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action of the same jurisdictional classification; and it may be enforced like any other judgment of the court in which it is entered . . . ." (Code Civ. Proc., § 1287.4.) Given that the arbitration award has since been confirmed, we cannot conclude that appellants were prejudiced by the court's application of collateral estoppel to the arbitrator's finding on the alter ego issue.

In any event, the trial court primarily relied on Code of Civil Procedure section 1287.6 to conclude that the unconfirmed arbitration award has "the same force and effect as a contract in writing between the parties to the arbitration." The court found that NBP[3] failed to adduce any evidence to rebut the arbitrator's findings on the alter ego status of appellants and the finding that Coyle effectively controlled all of the entities; the record supports those findings.

Appellants also argue that the arbitrator did not decide that they were alter egos for all purposes, but only as to the 2004 promotion and sale of the Clay Street property and the management of the property from 2004 to 2013. They assert that the arbitrator's findings do not cover the 2008 sale of Sollner's interest in the property.

The record shows the arbitrator's findings were not so limited. Rather, the arbitrator found that "for purposes of Coyle's activities regarding the promotion, sale and management of 3300 Clay Street . . . , each of these parties—*Coyle, Telegraph Hill Properties, Inc.,* [and] *North Beach Partners, LLC, . . .* was the alter ego of the remaining parties and acted on behalf of the others as if they were one entity. . . . [A]ny and all actions of *Telegraph Hill Properties, Inc.,* [and] *North Beach Partners, LLC, . . .* are attributable to W.B. Coyle, individually and on behalf of these putative entities that he controlled." Indeed, the arbitrator broadly concluded that "the legal status of *Telegraph Hill Properties, Inc.,* [and] *North Beach Partners, LLC, . . .* was disregarded by Coyle and therefore he and the entities are the alter egos of the others."

_____

[3] NBP filed an opposition to the motion to amend the judgment; appellants did not oppose the motion.

5

Appellants contend, however, that because the arbitration and the prior lawsuit did not address precisely the same issues, collateral estoppel does not apply to the arbitration award with respect to the prior litigation, and therefore it was incumbent upon Sollner to offer evidence to prove the award should have a collateral estoppel effect. We see this through a different lens. Because the arbitrator's alter ego finding encompassed *all* activities relating to the "sale, promotion and management" of 3300 Clay Street, it appears on its face to include all disputes arising out of Sollner's investment in and NBP's management of the building. While the arbitrator was deciding multiple specific issues posed by all parties, it is evident from a review of the 45-page award that the alter ego finding necessarily encompassed all matters relating to 3300 Clay Street, not just the specific items in dispute in the arbitration. This does not mean, as contended by appellants, that the alter ego determination was made "for all purposes." Rather, that finding was made solely with respect to the "sale, promotion and management" of *3300 Clay Street*. Consequently, Sollner was not required to offer any additional evidence to show the award applied to the dispute between Sollner and NBP in connection with 3300 Clay Street.

Finally, Telegraph Hill Properties argues that there is no evidence that it controlled the litigation. Regardless of whether Telegraph Hill Properties *itself* controlled the litigation, the record supports the arbitrator's finding that appellants acted as one. Consequently, there is simply no basis for reversing the trial court's judgment finding that appellants were alter egos of NBP and that Sollner was entitled to an amended judgment to add them as judgment debtors.

### III. DISPOSITION

The judgment is affirmed.

6

_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.